## (January 6, 1965)

■ In the Matter of the Claim of LEON SZMANIA, Respondent, v. FORD MOTOR COMPANY, Appellant, and SPECIAL DISABILITY FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. On its appeal from an award for partial disability due to low back sprain, the self-insured employer contests only the board's denial of reimbursement upon the finding "that there was no prior physical impairment within the purview of Section 15-8 of the Workmen's Compensation Law". There was medical proof that at the time of the injury in the low lumbar region, upon which this claim was predicated, claimant had made "a very good recovery" from the "old cervical lesion" which appellant stresses; and an attending physician reported no history or evidence of contributory pre-existing injury or disease. The dissenting

memorandum cites evidence to the contrary, much of it consisting of self-serving statements by the self-insured employer, which it terms "conclusive"; but, under the well recognized rule, the conflict between this evidence and that adduced from Dr. Hamby and Dr. Zimdahl, at least, was for the board to resolve. Clearly the board was not required, on this record, to find any "permanent physical impairment" contributing to the subsequent disabling condition. Further, there was no medical evidence of "a permanent disability caused by both conditions that is *materially and substantially greater than that which would have resulted from the subsequent injury * * * alone*" (Workmen's Compensation Law, § 15, subd. 8, par. [d]), italics supplied; and the dissenting memorandum points to none. Although they are not properly before us in any event, we find without merit appellant's additional contentions that the "sole issue" considered at the hearings before the Referee was that of causation and that the issue of Special Disability Fund liability was not properly explored and was "prematurely" decided. On the contrary, following appellant's claim for reimbursement, the case was adjourned for the production of "all evidence on the question of liability of Special Funds"; proof was taken on that issue on the adjourned date and at a subsequent hearing set for that purpose; following which employer's attorney stated that he had nothing further. Decision affirmed, with costs to respondent Special Fund. Reynolds, Taylor and Hamm, JJ., concur; Herlihy, J., dissents and votes to reverse in the following memorandum: The majority is affirming the board's finding that the proof is not within the framework and purview of subdivision 8 of section 15 of the Workmen's Compensation Law, but in my opinion, considering the record as a whole, the factual situation is a classic example of a Special Fund problem. Applying the liberal interpretation applicable to the Workmen's Compensation Law, it seems to me that we should look to the substance rather than to the form. In *Matter of Durdaller* v. *Liberty Prods. Corp.* (16 A D 2d 849, affd. 12 N Y 2d 787) we reversed a decision discharging the Special Fund and stated that where a claimant suffered from obesity, the condition was obvious and that the employer knew the condition was due to disease since there was a pre-employment physical examination. The claimant herein entered the employ of the Ford Motor Company on October 20, 1954 at which time he had a physical examination. He testified that on numerous occasions while working he struck the back of his neck on braces attached to boxcars and that in October, 1957 his right arm went numb. In November he consulted a physician who noticed objective symptoms, *inter alia*, that he walked with a mildly ataxic gait and when *testifying in 1960*, the doctor stated that the *condition progressed markedly due to the defect in his cervical spine.* Reverting to the original medical examination (1957), it disclosed that there was a midline cervical disc protrusion and a cervical laminectomy was performed on December 9, 1957 which, at best, was only partially successful. It was also discovered that he was a mild diabetic. No claim for compensation was made but the employer had notice and knowledge of the various ailments and afflictions of the claimant. Following the operation he returned to work on January 20, 1958 although his right arm and two fingers were still numb and he was reclassified "C" signifying "physical impairment permanent". The employer testified that classification "C" was the lowest physical category in which a man would be accepted for employment. The plant surgeon of the employer in a report dated March 16, 1960 stated: "*The degenerative lumbar disc with protrusion was discovered on a routine spinogram on November 26, 1957 which antedates the accident of April 29, 1959.*" He further stated: "Mr. Szmania was reclassified to a 'C' rating on January 16, 1958. This classification was made at the time Mr. Szmania returned to work at the

Buffalo Stamping Plant after having a cervical laminectomy. In the course of my examination on January 16, 1958, I noted loss of motor function in the right hand as well as some impairment of Mr. Szmania's position sense. It was also noted that certain of his deep tendon reflexes were very hyperactive. An added factor causing to classify Mr. Szmania in a ' C ' rating was the report that he had diabetes mellitus." The failure of the board to charge the Special Fund (§ 15, subd. 8) where there was an issue as to pre-existing diabetes was reversed for further proceedings. (See *Matter of Armstrong* v. *Blakey,* 16 A D 2d 843.) In a report dated April 24, 1961 the plant surgeon further stated: "It is evident from the many entries and reports in Mr. Szmania's file that he *had conditions, existing prior to the incident of April 20, 1959, which were contributing to a permanent partial disability. These pre-existing conditions included diabetes mellitus cervical spondylosis, and protrusion of a disc at the L 4-L 5 interspace.* The Workmen's Compensation Board ruled that the incident occurring on April 20, 1959 caused an aggravation so as to produce an added partial disability. Assuming that this is true it is concluded that such injury is now permanent and is superimposed upon a major pre-existing disability." (Italics supplied.) The surgeon who performed the operation on the claimant in 1957 in a report dated April 20, 1961 stated: "*It is my impression that the injury of his low back on April 20th, 1959 aggravated the pre-existing conditions which were causing a partial and permanent type of disability.* These pre-existing conditions are cervical spondylosis, diabetes mellitus, and a lumber disc protrusion at the L 4-5 interspace. The latter was demonstrated in a spinogram done in November 1957 and did not produce symptoms until the above injury. *He has a permanent disability which is now greater than had existed before he hurt his back in April 1959."* (Italics supplied.) The record is permeated with this type of testimony, all of which is conclusive that the employer should be relieved from liability and the responsibility should be that of the Special Disability Fund under subdivision 8 of section 15. The majority would affirm on the basis that in their opinion there is no exact word descriptive medical testimony sufficient to satisfy the mandate of the section but it has been decided that it is the "thought and meaning" of the medical testimony that controls. (See *Matter of Ernest* v. *Boggs Lake Estates,* 12 N Y 2d 414.) The Court of Appeals applied the rule to sustain a decision of the board. It seems appropriate that the same principle should apply between the carrier and the Special Fund. In my opinion, there is no substantial evidence to sustain the naked finding of the board that " there was no prior physical impairment within the purview of Section 15-8 of the Workmen's Compensation Law ". I vote to reverse and remit for proceedings not inconsistent with this opinion.